Good morning, Attorney Richard Rowe. Everybody's kind of moving around still. Wait one half a second on that. We're ready to go. Okay. For Mr. Roy Cabaccang, it's a long convoluted case. It's ten years in the making. And it arrives here after a remand from the court of appeal en banc in Guam. And there's a couple of, I'll be splitting the time with Mr. Gorman, there's a couple of primary issues I would like to address. And number one, when the court sent it back to Guam, it did so with the caveat after having reversed five counts that that court didn't decide whether count one, which was a CCE, the continuing criminal enterprise, would stand. They did that because they couldn't make the decision because they reversed five of the importation-related counts, and therefore left it to the trial court to decide. And basically, the trial court reversed that, said I can't decide, I'm reversing count one, and then reinstated count two, which was a conspiracy charge. It's our position very plainly that there was no jurisdiction to reinstate count two for the very simple fact that the court of appeal en banc expressly denied the remand. But the remand had been sought only by the other two brothers, not by Roy. Isn't that right? Which remand? When you're saying the remand? No, no, the remand was all of them. The case was remanded from the next one. On count two. Well, the remand on count two, no, I think that that clarification order, the clarification order specifically denied a remand on count two to all the parties is the way that I read that remand order. Who had sought the remand on count two? All the defendants. I don't think that's right. There was a – well, originally, there was a clarification motion that was filed. And that clarification motion was sought on behalf of all of the defendants, is my understanding, and that the court in any event denied remand on count two. But I believe that the clarification was filed by all the parties, on behalf of all of the defendants. You believe that? No, I don't know. That's my understanding of the record, that that – when the court issued its denial, it was referring to a denial of count two, period. It said we deny remand on count two. And that – that clarification order applied to all of the defendants. But had count two been brought before the court of appeal by your client? In order to just make it simple, I'll refer – I mean no disrespect, I'll refer to your client by his first name, by Roy. Yes. You mean originally? Yes. Was that in the original appeal? Yes. I believe that – well, part of the problem was that – yes, I believe that it was, and it was – yes, he was sentenced – well, what happened at the original sentencing hearing, count two was deemed to be a lesser-included offense. Okay, let's – so he was not sentenced on that. Correct. If that's what the court's getting at. But there was – I understand where the court was heading. But there was nothing in the remand order that limited the count two issue to the other defendants. Well, but the problem is, and I understand where your argument's coming from, and it's not a – your argument is not a frivolous argument. I mean, the court's order says without specifying which defendant. That's correct. I mean – I mean, that was – I see what you're saying. If the original sentencing hearing, count two was vacated because it was deemed to be an included offense. But there was nothing in the subsequent remand order, in the clarification order, that said that it was not applying to Roy. We would have to be either moving an apostrophe or changing the wording of the clarification order. Well, no, you don't have to move an apostrophe because there are – we also have James and Richard. So if it's only as to them, you still need S apostrophe. You can't move the apostrophe. But it still didn't say that it wasn't applying to Roy. And I see where the court's coming from. But even if count two is deemed to be valid, assuming — Yeah, let's assume that it is in front of the district court. I understand that's your argument, Mr. Connery. Right. If we go to – if we say that it's valid for whatever reason, we run into a major sentencing, what turns out to be a sentencing problem, because the jury did not make a determination. Count one was reversed by the judge on remand, thrown out. He, in essence, moved the count one findings over to count two and said, I'm just going to apply those and give them life. And that flies in the face of what the recent case law is, Apprendi, et cetera, that requires the jury to make a determination as to the amount. And that has some pretty major impact in this case, because on the other hand, the judge did not make a determination on count six. And apparently what the judge did, it's a little bit on count six, but what he did was shifted those findings over to get over the – to get to the offense level that, in essence, imposed the life sentence. And that's what Apprendi prohibits. It requires a jury determination. And the Court is not allowed – I mean, if the jury didn't make the determination, then the Court has a limit on the sentence that it can make under the Apprendi doctrine. And that's exactly what we've got in this case. Now, I can jump the gun a little bit. There was an issue as to whether Apprendi is still in play, because I believe in the U.S. Attorney's brief they said prior to the remand hearing. So Apprendi is definitely in play at this sentencing hearing. And I think it was definitely violated, because there's no finding. And without a finding of amount, there's a limit on what the judge could impose, and it is not a life sentence. So it becomes crucial. I don't know if I specifically cited it in the brief. I'll bring – just to bring up the statute, if the judge is not allowed to go and create his own amount and goes over the amount to get to life, which he can't do, he's limited under the drug sentencing statute to either a 20- or 30-year sentence. And I didn't cite it, but I'll just cite for the statute, which is just the drug statute. It's the 21 U.S.C. 841B1C. It's a 20-year – it's 30-year max, and it's 20 years if there's a prior. Now, everybody has assumed there was a prior. I don't know that there was ever a prior 851 filing in this case. But it becomes – it makes a major difference in this particular case. If we can just say, well, we're going to just find, because the jury found it on count one. I give the judge a lot of credit in reversing the continuing criminal enterprise conviction on count one on the remand. But I think in order to impose a life sentence, he got creative and said, well, you know, we've got these amount findings here, and we're just going to pretend that they apply here, and we're going to come out with the same. And therefore – Guidelines being advisory, aren't we talking about the judge being able to find individual amounts? Well, the guidelines are advisory, but I don't believe it enables him to violate Prendy and determine an amount. He still has to work off of the guidelines. And what he did is he just took a jury finding and moved it from point one to point two and said, this is what the jury found. Did it exceed the statutory requirement, or did it just exceed the guideline requirement? It exceeded the statutory maximum, which I – and if there's no jury finding, I believe that – not I believe. Prendy and the cases prohibit that. He may certainly have got the offense level up to the point where it was a life sentence, or, I mean, that was the impact of it. I don't know if he was trying to get to an end to a means or how he did it. But – What does the statute require as far as a maximum? Well, the statutory maximum without a finding by the jury of an amount would be 20 years without a prior and 30 with a prior conviction. Now, that issue really didn't come up, but if the case goes back for remand, I think it's something that the trial court probably should be made aware of, although that 30 – the issue really hasn't come up because it now becomes an Apprendi issue, and it's going to open up a whole new situation. So I wanted to give time to my co-counsel. That's the main issue, and I'd be glad to answer any questions. That's the primary – there's some collateral sentencing issues here, but that's really the issue in the case. Why don't we hear from your co-counsel, and then my guess is the government might have a response to you, and then you'll get a chance to respond to the government. I appreciate that. Thank you. Good morning, Your Honors. Good morning. First off, let me apologize that the order seemed not to have gone out very timely. We are delighted that you're here. I am delighted to be here, Your Honor. My name is John Gorman. I'm the Federal Public Defender for Guam. I represent James Capucon, and I agree with the Court, since we have the three brothers, that probably it would be easier just to use the first names, and the Court of Appeals has done that also. So I represent James. Richard, the other brother, is represented by another attorney in Guam. He had filed a motion not to appear and asked me to argue for him. I don't know what happened with that motion, but with the Court's permission, I'd be happy. I think we can rule on the bench, and we'll hear from you as to both. Thank you, Your Honor. And it is appropriate in that they both share the same legal issues. And it is appropriate to look, first of all, to differentiate between these defendants, especially between Roy and Richard and James, because Roy is the mastermind of this drug conspiracy. He's the ringleader. James, for example, in this case, there was voluminous trial testimony that went on from September to December. Very little of it talked about James. When it came time for the money laundering, the testimony was $1.1 million worth of money laundering. James was only implicated in $43,000. That's less than 5 percent of the money laundering. When it comes to the amount of the drugs, the guideline calculations were for 3 kilos. The trial testimony for James indicated 134 grams, 134.6 grams. That's less than 10 percent of these drugs. The conspiracy ran for six years, from 91 to 97, actually over six years. The testimony was that James' role started in August of 94, so less than three years. So in the same, although I don't know the specific facts as much for Richard, but I do know they're somewhat similar. These are two different defendants from Roy. They're much less culpable. They're much more minor players. Roy was always the centerpiece of the government's case. He was their main target. And this fact is reflected in the orders, both the en banc order and the clarification order. And what you have is Richard and James both got life sentences, but they never really got a chance to present their case. But the question I have is, was it open on remand to the district judge to resentence? District judge thought not. Yes. And our position, of course, is absolutely, and we rely on the case of Ruiz-Alvarez, which says that when one count is removed, vacated, the sentencing package comes in bundle. The court has then the authority to put together a new package. Now that's absent a clear message from the appellate court. And that's what we argue here, is that there is no clear evidence to the contrary, that the standard practice is when you have a case where you have multiple counts and one count is vacated and the other counts are affirmed, it goes back to the district court and under Ruiz-Alvarez, it's all becoming bundled. Now it's time to do it. Now it's time to resentence on all. And the general practice in this circuit is that's the way it's supposed to be handled when you look at Tanna and also Coterio, which I cite in my brief. Yeah, but Mr. Corbin, what do you do with the clarification order of the in-bank court, which says we deny appellant's motion to remand the remaining counts to the district court? That's what I would ask the court at this time to look at that clarification order, because it is very confusing. It is not a clarification order for James and Richard. And it's very important to look at the language, and, Your Honor, it also picked up on where the apostrophe is on appellants. This clarification order, by a clear, common-sense reading of it, when you look at it, does not talk about James and Richard. For example, at the heading, and this is on page 168 of the Volume I of the Joint Excerpts of Records, the heading lists all three defendants, but then it lists the counsel for all three defendants. And they all say for defendant appellant Roy. They don't even mention James or Richard. You can say, oh, it's just a typographical area. But let's go down further. You look at the actual order itself. It's only five sentences long. All the first four sentences directly talk about Roy, one after another. First sentence, we remanded Roy Cobicon's conviction. Second sentence, we grant appellant's motion for clarification is to count six, which James and Richard were never convicted of. So that has nothing to do with them. I'm sorry. I should have started reading along with you from the beginning. Give me the citation on the excerpt. It's on page 168 of the Joint Excerpts of Records, Volume I. I thought I knew it from memory, but I realize as I listen, I don't have it totally. OK. And it is good to go along with it because when you read this, it's only five sentences. The first four sentences refer exclusively to Roy. First sentence, again, as I mentioned earlier, we remanded Roy Cobicon's conviction. The second sentence talks about count six, which has no relevance at all to James or Richard. The third sentence, if the court affirms Roy Cobicon's conviction, his conviction shall stand. The fourth sentence, if the court reverses the conviction, it could reconsider Roy Cobicon's sentence. So the four out of the five sentences explicitly discuss Roy. No mention of Richard or James. Now we come to the final sentence. We deny appellant's motion. But when you see appellants, the apostrophe is after the appellants, which is used all the way through. For example, in sentence number two, we now grant appellant's motion for clarification is count six. That has to be Roy. The apostrophe is misplaced because James and Richard did not have a count six. So this clarification motion, with all due respect, clarifies. It doesn't clarify anything in respect to James and Richard. It doesn't discuss them at all. They're the forgotten men consistently in this case, and they're both serving life sentences. And when you look at the clear wording of this, especially, as Your Honor noted earlier, where that apostrophe is, the apostrophe is misplaced incorrectly because the first four sentences talk. It should be appellant apostrophe. Well, why is it incorrect? Because the motion is made by all appellants. It is made by all the parties. Well, then why is it incorrect? Because it seems to talk only about Roy. No, but it addresses appellant's motion. But when you look at it, for example, on the second sentence, we now grant appellant's motion for clarification. That wasn't the appellant they're speaking of.  No, it's not. It's James and Richard. And the reason for that, I was not on that panel, so I'm just trying to read. I'm just trying to objectively read the order. It's because the motion was made by all appellants. That's the reason it's in the plural. That is true. It's not a mistake. It's not necessarily a mistake is all I'm saying. Yes, Your Honor. But I would argue that it does go to the fact that this clarification order really is talking about Roy. It is not talking about James or Richard. And then when you look down further, when you look at Judge Kaczynski and O'Scanlan and Tallman's dissent, they respectfully dissent, cannot join in an order that further unravels the district court's judgment. So even the dissent saw that this was an unraveling of the judgment. And, again, unraveling, unbundling. It is our argument that there is, under Cotarino, the general practice on remand is that they become unbundled and that you resentence, unless there is clear evidence to the contrary. So that's why it is our position, when you read this clarification order, there is not clear evidence to the contrary regarding James and Richard. And this is a very serious matter. They're both doing life sentences plus a 20-year sentence. So the question that you bring here is whether the district court erred in construing this order as foreclosing his authority to resentence the other two defends. Absolutely. And we say the district court, when you read Ruiz-Alvarez and also when you read two other cases I cited, I would direct your attention to it, Cote and Washington. And when you look at Cote and Washington, too, you see these are all cases where the defendant said, no, no, no, no, no, no, unremand. We can't get into resentencing. And this court has held that when cases are remanded to the district court, the district court has inherent power and jurisdiction to do the right thing. So it's interesting to see Ruiz-Alvarez, Cote, and Washington are all cases where the defendant said, where the government said, hey, hey, hey, the district court does have the power on remand, where the evidence is not clear evidence to the contrary, that the district court does have jurisdiction. And the court said, yeah, the district court does have jurisdiction. And it is our argument that the district court does have jurisdiction. I would like to save maybe one minute for rebuttal. You're a little over, but let's hear from the government, and then we'll hear from both of you in response. Ms. Spadafore. May it please the Court. Karen Johnson, appearing for the United States. Obviously, these podiums are meant for much taller people than I am. I hope that I'm you can hear me all right. No, I can't. I'll take care of Mr. Gorman's argument first. When you file a motion for clarification, the question is, what are you clarifying? When the dust settled, Richard and James were convicted of count two and count four. Count two, they received a life sentence. It is clear in the final Cavachon opinion that the court did not intend to remand count two. They say at page 11 of the opinion, quote, they're addressing the defense, the dissent at this point. Notwithstanding a reversal of their importation-related convictions, each of the Cavachon brothers will still serve a life sentence for his involvement in the methamphetamine ring. The only life sentence concerning James and Richard was count two. Clearly, the court en banc contemplated that the sentence on count two would stand. And this was also understood by the defense motion. They filed a joint motion for clarification. The defense was asking for a remand of count two, which I think shows an understanding that, in fact, count two had not been remanded, and for count six for Roy, which shows, I think, an understanding that count two concerning Roy Cavachon was not before the court. I think the court's, in view of the court's opinion and the motion filed by the defense, the clarification order is perfectly clear. The only thing coming back for resentencing was going to be on the CCE and count six concerning Roy. I think that, I don't, I think the court made it perfectly clear. If I may, then I'll turn to my main argument, and that concerns Roy. The only issue properly before this court concerning Roy Cavachon is whether the CCE charge so tainted count two that it should not have been reinstated. Counsel, in his brief, raises several other issues. What do you do about the, excuse me, what do you do about the argument that count two for Roy was not remanded? Count two was never. That's two. Count two was never before the court of appeals. As to Roy. Count two was vacated. At least as to Roy. I'm sorry? At least as to Roy. As to Roy. I'm sorry. As to Roy, count two and three were vacated by the district court. He was sentenced solely on the CCE, and count two and count three were never before the court of appeals. And when you read the briefs of the parties, there's a clear understanding that their attack is on the CCE, count one. Counts two and three are not mentioned anywhere. And because it was not before the court. What gives the district court jurisdiction to enter a sentence on count two when it's not remanded? Well, count two was vacated, so because the CCE, which is a, the count two is a lesser included of the CCE, and that gives the authority to reinstate it if the CCE. You mean count one was vacated. Count one was overruled. The CCE was sentenced with a determination to see whether the importation had so tainted it that it could not stand. The court made the decision that, in fact, the CCE could not stand. But count two was a lesser included, and the court has the authority to reinstate count two. The remand order does not concern count two. It was never before the court of appeals. The argument being that as to Roy, when their first appeal went up, count two wasn't appealed because it had already been vacated, given that it was the lesser included as to one. Precisely. Okay. And the court clearly has the authority to reinstate a lesser included if it found the CCE did not stand. But the judge mentions in a very long opinion by Judge Carter, long findings, that concerning reinstating count two, the defendant has the burden of proof to show that, in fact, the CCE so tainted count two that for some reason it should not be reinstated. That issue was never presented. The defense never raised it below. They focused on the remand issue. And they never, referring now to page supplemental excerpts of record 271 of Judge Carter's findings, he cites the Morris case, the Rutledge case, and then says that the defendant has the burden, and he has to demonstrate that but for the proper inclusion of the erroneous charge, in this case the CCE, the result of the proceeding, the guilty finding on count two, would have been different. There was no, there wasn't even any argument on this point below. The defense, in effect, conceded it. And the sentence proceeded on count two. There was no argument as to whether or not it could validly be unvacated and reinstated. That simply wasn't an issue. Could you respond to the Apprendi argument, assuming that the district judge has the authority in Roy's case to resentence or rather to sentence on count two? There's an Apprendi argument. Could you respond to that? Yes, Your Honor. There are two aspects to that issue. First, unlike James and Richard, Roy was charged with the CCE. In it, it charged that he was a leader or organizer, and it charged 3,000 or more grams of ice. It incorporated by reference counts two and three and the other counts that were part of his organization. The jury's special verdict, and I think that that is at, I want to say, page 30, supplemental excerpts of record page 30, that they found that he was the principal administrator or leader of the enterprise, and all the violations referred to in count one involved at least 3,000 grams of amphetamine, methamphetamine. Our position is that the incorporation of the special verdict of all of the violations charged in count one constitutes a finding by the jury that count two involves 3,000 grams. In other words, it should not have been necessary for the government to replete in count two that involved 3,000 grams, because count two was already incorporated by reference in count one. So that's one argument, and I think it's a valid one. The second one would be, if the Court does not buy that argument, this Apprendi issue has already been resolved, and that is, by the Court's opinion, you'll find this at the excerpts of record page 87 and forward. Concerning Richard and James, they had never been charged with the CCE, so their count two did not have that special allegation of 3,000 grams. Therefore, as to Richard and James, you had error, and it was plain error. No question about that. And the Court proceeded to analyze whether, although it was error and it was plain error, that there was a miscarriage of justice to allow the sentence to stand. And the Court held that, in fact, they would not reverse the sentence, and that the evidence was so overwhelming in this case concerning the quantity of drugs, that Apprendi did not affect the validity of count two as to Richard and James. And if it follows that it did not affect count two as to Richard and James, the same analysis would necessarily apply to Roy. So those are my two responses on Roy's Apprendi issue. As for the rest of it. If you take count two, what was the maximum statutory offense? If you take count two without, concerning Roy now? Yes. If you take simply distribution of methamphetamine, you would have to assume it has to be under five grams. The way the methamphetamine laws go for ice, which are very, very stringent, up to five grams is simply, I think, zero to ten years. From five to 50 grams, it's a mandatory five years, and above 50 grams, it's a mandatory ten years, and the maximum of life. Without an allegation of quantity in count two, you're looking at the lowest possible punishment, which is up to ten years, zero to ten years. No mandatory minimum. And just to make sure I understood it again, above what quantity you're vulnerable to a life sentence? 50 grams? Above 50 grams. Yeah. That's the breakdown. For the other issues, I think I'll basically stand on my brief. The court made it very clear, for example, he was sentencing on count two and six, that counts four, seven, and eight had already been dealt with, and he was not going to do that. He was going to re-sentence on those. No one objected to that. So unless the court has other questions. Was it necessary for the jury to make the finding of quantity, or could the judge under Booker make that finding? The judge, the apprendi opinion, which I think, of course, is still good law, requires the jury to find the amount. Either the jury has to find it, or the defendant has to stipulate to it. The Ninth Circuit has said that it's not an element of the offense, but for all practical purposes, it is. When I charge an indictment, for example, I do one of two things. I'll have the quantity specifically alleged in the count, or, if I'm not sure what quantity, I might actually prove at trial, which has never happened yet. I will have a special verdict with a particular quantity. Well, I take it back. We did have a case like that, where the defense was, is that I distributed ice, but it wasn't more than 50 grams. And we submitted a special verdict where we broke down 0 to 5, 5 to 50, more than 50. But the jury has to establish the quantity. And that's why, concerning Richard and James, they did a clear error, plain error analysis. Let me ask you this. As I look at, I'm on page 30 of the excerpt, so I'm looking at the jury verdict that's coming back. And as sort of the second paragraph of count one, which is reproduced here at the top of page 30, the jury has to establish the quantity. And the jury finds that the violations referred to in count one involved at least 3,000 grams of methamphetamine, which is above 50, or at least 30,000 grams of a mixture or a substance containing a detectable amount of methamphetamine. Let's assume that the jury found the second rather than the first. That is to say, they find a large quantity, 30,000 grams, containing, quote, a detectable amount. Does that produce life sentence? No, it doesn't change the sentence at all. The 30,000 grams of a detectable amount is equivalent to the 3,000 grams of ice. Ice has to be 80% or more purity. That is to say, it has to be 80% or more of methamphetamine hydrochloride. That's what constitutes ice. No, I'm not sure you and I are speaking the same language at the moment. There's nothing in here that talks about ice. It says either 3,000 grams of methamphetamine or 30,000 grams of a mixture or substance containing a detectable amount. Yes. So my question to you is, if all the jury found as to amount is at least 30,000 grams of a mixture containing a detectable amount of methamphetamine, is that enough under count? Yes. And the same penalty applies. The same penalty. Yes, indeed, Your Honor. The same penalty would apply for both quantities, for both mixtures, I should say. Because? Because that's what the statute provides. And what exactly does the statute say? Well, this would be in the drug tables, Your Honor. And the sentencing guidelines, Chapter 2. The drug tables deal with both substances of greater purity and also substance. So the same penalty applies. Yes. But if I look at the statute, I will find something that tells me that 30,000 grams of a mixture containing a detectable amount is, for sentencing purposes, as if I had more than 50 grams of methamphetamine? Yes, Your Honor. Okay. And if there's a disagreement, I guess they can tell me. I do have one other question. I'm curious as to what the government's position is on two of the Supreme Court cases that have been brought before the Supreme Court. The Supreme Court cases, Watts and Putra, which have not been specifically overruled by the Supreme Court. In those cases, the judge was allowed to find a quantity that the jury did not find, and in fact, in both of those cases, was allowed to find a quantity when the jury had actually acquitted the defendant of those two other crimes. In other words, there were two crimes alleged. And we'll take Putra, for example. Two crimes were alleged. There was an acquittal on one, conviction on the other. The judge was allowed to use the quantity in the acquitted crime in calculating the sentence. Do you think those – there's been no specific overruling. Do you think there's still good law? Your Honor, the question would be, did the judge's finding of a specific drug quantity affect the maximum sentence? If the quantity affects the maximum sentence, the jury has to find it. The judge, for sentencing purposes, can consider drug quantity as part of relevant conduct. But I – and I'm not frankly familiar with those cases and the exact mathematics that plays out. But if it affects the maximum sentence, I think the jury has to find it. The judge, for example, could not – say the jury acquitted the defendant specifically on 100 grams. I don't think the court could say, I find 100 grams and give the man a mandatory 10 years. I don't see how the court could do that. In this case, then, the maximum sentence under count two would have been just 10 years? If it's no specific amount of drugs, then we have to assume a trace amount, and that's zero to 10 years. No mandatory minimum. Okay. All right. Thank you. Thank you, Your Honor. Oh, and if I may address one question. You were asking about the 3,000 versus 3,000 grams. Yes. My understanding of the trial, and I was not the trial attorney on the case, is that the drug quality and the drug quantity were simply not in dispute. The question was, were these men involved in trafficking these specific quantities or qualities? But I understand the lab reports, I don't think there's any dispute as to what exactly was involved. When you say not in dispute, you're speaking with respect to count one only, or also count one and count two? The entire indictment. My understanding is that the lab reports were not contested. Because the same drugs were involved in count one and count two? Yes, Your Honor. Thank you. Okay. Why don't we hear first from Mr. Rome? Let's start out on the assumption two minutes for you and then two minutes for Mr. Gorman and see what happens. You know, I didn't hear the court. Two minutes. Okay. Briefly, I think that with respect to the amount of the last point, I think it was in dispute, and that's why it was up to the jury to either check or not check that box. I think what counsel is saying in her opinion, you know, she might have thought that it was proved, but that was an issue that wasn't stipulated to. I think there's a clear answer to this question. It's just I don't know it, but my guess is that you do. The government contends that 30,000 grams of a mixture containing a detectable amount of methamphetamine, if that finding of fact by the jury can be carried over into count two, does that permit a life sentence? I think it would result in a life sentence. Okay. Okay. That's my only question. Does that qualify in terms of what would kick it up to eligibility for a life sentence? Okay. Yeah. I didn't try this case. The reason my understanding is the reason that that special allegation was in there, this is all going back 10 years, is because that, those elements in that special finding qualify the defendant for a life sentence under the CCE statute. It was the function of that special finding to relate strictly to CCE. So if that's gone, that took care of, I think that's why it was in there. Yes, I understand. Okay. Secondly, just, but if, but is that enough to qualify for a life sentence under count two if it is factually found by a jury? I believe that it's far more than enough. Okay. There's so many numbers that I can't recall the exact, I believe that's way over the top. But your issue is that it can't be carried over from count one to count two. But if it can be, then that's enough. Okay. Then it has a problem. I think one of the reasons that it can't be carried over is because we'd be re-weighing the evidence, there were five counts that were reversed. This count, this finding was part of those five counts, all the importation counts. To say that we can move it disregards the court of appeal opinion that threw out half of the case. There would be a totally different case. So I don't see how we can just say, well, you know, let's take it from square one to square two. Just to be very brief on a couple other points, with respect to when Your Honor was asking me the question about the motion, and I misunderstood what you said on the count two, but the motion just in checking was made by all the defendants. And in part of that clarification motion, it says we, this is a quote from the clarification motion itself at page 118, we seek a clarified remand order that would also remand counts two and six. So Roy was part of the we. But the argument is that count two was not up before the court of appeal as to Roy. Well, that's true. But the court of appeal may have had a different take on it. They might have thought that if the CCE was to be reversed, count two may have fallen with it and therefore there was no reason to remand it. They might have been thinking a step ahead. Otherwise, they could have just remanded it. If count one was upheld, everything would have been fine and dandy. The court of appeal might have been thinking, well, if we reverse count one, count two is included. We don't need to remand it. And there's one other point that I think is important. I'm sorry to spoil over. In the trial, and I pointed it out in my brief, when the parties went back for resentencing, nobody thought count two was back there. The pre-sentence report did not address it. I have it under that argument. And the defendants didn't address it. When it came up that all of a sudden count two was rising up, being resurrected, the parties hadn't briefed it and the pre-sentence report hadn't addressed it, because I don't think anybody thought that count two was down there. The judge kind of was the only one thinking along that line. Now, he might be right, but I think the consensus was, what's going on here? Then the sentence came in, and nobody really got a chance, I think, to think it through, because it kind of came out of the blue at that hearing. I don't want to take any further time. Just on the Apprendi, the fact that it was litigated, but it was not litigated post-reversal of the five importation counts. So Apprendi is back on the table. The Court originally did say Roy has no Apprendi issues, but that was a different day and a different time. Thank you, sir. Thank you very much. Mr. Garmon. Two minutes. I appreciate Your Honor's patience. I'll try to be as brief as possible. There also is an Apprendi issue for James and Richard, which was brought up at, and it was filed in the resentencing motions down below. We never got to it because the judge said we don't have it. The judge said I don't have jurisdiction. That issue is very alive for these two gentlemen, because there is no factual finding by the jury regarding the amount. What is the issue? The issue is that there is no finding by the jury as to the amount. They were sentenced to life in prison. And as counsel pointed out, without the amount being found by the jury, they're limited to 10 years. So it's a very serious issue. I didn't brief it in front of this Court because really it wasn't time to get to it yet. Because, first of all, we see whether or not the district court had jurisdiction. But there's a serious issue here regarding the Apprendi issue, which is still alive because this case was in the appeals pipeline. And the second point is, as I noted earlier, the evidence has to be clear and contrary. And when you look at that clarification order, I would argue this one is not clear. Therefore, the sentence this severe takes this high. And those five sentences, I would argue that the district court did have jurisdiction on this case to rebundle, to resentence. Thank you very much. Thank all of the lawyers for a useful argument in this case. The case of United States v. Cavacon is now submitted for decision. We are in adjournment until tomorrow morning. This court is adjourned.
judges: Hug, Tashima, W. Fletcher